IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN KERR,                          )     CIVIL ACTION NO. 3:24-68
                                    )
            Plaintiff,              )
                                    )     JUDGE KIM R. GIBSON
      v.                            )
                                    )
AMAZON.COM, INC., *et al.*,         )
                                    )
            Defendants.             )

**MEMORANDUM OPINION**

I.     **Introduction**

This action arises out of a traffic accident involving the tractor-trailer driven by Plaintiff John Kerr ("Mr. Kerr") and three other tractor-trailers. As a result of that accident, Mr. Kerr has brought an eight-count Complaint against multiple defendants. (*See* ECF No. 1-3).

Currently pending before the Court are two Motions. The first is a Motion advanced by Defendants Stoughton Rental & Leasing Company, LLC; Stoughton Trailers Inc.; and Stoughton Trailers LLC (collectively, the "Stoughton Defendants"). (ECF No. 8). In that Motion, the Stoughton Defendants request that the Court dismiss Count Five ("Count V") of Mr. Kerr's Complaint, which is the lone Count containing claims against them, (*id.* at 3–4), for failure to state a claim upon which relief can be granted. The Stoughton Defendants' Motion is fully briefed, (ECF Nos. 9, 27), and ripe for disposition. For the following reasons, the Court **GRANTS** the Motion, dismisses Mr. Kerr's claims at Count V without prejudice, and affords Mr. Kerr twenty-eight days from the entry of this Memorandum Opinion and Order to file an Amended Complaint with respect to his claims at Count V, if he so chooses.

The second Motion is brought by Defendants BNSF Railway Company ("BNSF") and Burlington Northern Santa Fe, LLC ("Burlington Northern") (collectively, the "BNSF Defendants"). (ECF No. 24). In that Motion, the BNSF Defendants request that the Court dismiss them from this matter for lack of personal jurisdiction. (*See id.*). The Motion is fully briefed, (ECF Nos. 25, 37, 55), and ripe for disposition.[1] For the following reasons, the Court finds that it lacks personal jurisdiction over BNSF and Burlington Northern, and the Court finds that Mr. Kerr has failed to show that he is entitled to jurisdictional discovery.

## II.    Jurisdiction and Venue

The Court has subject-matter jurisdiction over this case because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. (ECF No. 1); 28 U.S.C. § 1332; 28 U.S.C. § 1441(a), (b)(1).[2]

---

[1] The Court notes that the following three sets of Defendants (the "Crossclaim Defendants") also advance crossclaims against the BNSF Defendants: (1) Amazon.com, Inc. ("Amazon"); (2) H&H Brothers, LLC ("H&H") and Aslam Yusopov ("Mr. Yusopov"); and (3) Krystal Lease, Inc. ("Krystal Lease"), Mostafa Guure ("Mr. Guure"), and Omar Roble ("Mr. Roble"). (ECF No. 10 at 16–18; ECF No. 31 at 4; ECF No. 62 at 11–12). The BNSF Defendants contend that each of these crossclaims as against them is subject to dismissal for the same reasons as Mr. Kerr's claims as against them—the Court lacks personal jurisdiction over the BNSF Defendants. (ECF No. 24 at 2; ECF No. 39 at 2; ECF No. 68 at 2).

In considering the BNSF Defendants' request for dismissal, the Court notes that all of these crossclaims as against the BNSF Defendants are predicated on the allegations in Mr. Kerr's Complaint, and none of the crossclaims set forth any additional allegations or arguments as to why the BNSF Defendants are liable or subject to personal jurisdiction in Pennsylvania. (ECF No. 10 at 16–18; ECF No. 31 at 4; ECF No. 62 at 11–12). Therefore, the Court holds that it is appropriate to analyze coextensively the BNSF Defendants' requests for dismissal relative to both Mr. Kerr's claims and the crossclaims by the Crossclaim Defendants. For the sake of simplicity, the Court will confine its analysis in the text above to the BNSF Defendants' request for dismissal relative to the claims of Mr. Kerr.

[2] In reaching this finding, the Court makes two notes.

First, "in determining whether diversity exists, [Mr. Kerr's] inclusion of Doe defendants in [his operative] [C]omplaint[] carries no weight pursuant to Congress's amendment of the removal statute in 2011." *Hereford v. Broomall Operating Co. LP*, 575 F. Supp. 3d 558, 562 (E.D. Pa. 2021) (quoting 28 U.S.C. §

Further, venue is proper because this action was initially brought in the Court of Common Pleas of Somerset County, Pennsylvania. (*See* ECF No. 1); 28 U.S.C. § 1441(a); *Reassure Am. Life Ins. Co. v. Midwest Res., Ltd.*, 721 F. Supp. 2d 346, 351 (E.D. Pa. 2010) ("For actions removed from state court, however, venue is governed by 28 U.S.C. § 1441(a)[.]") (citing *Polizzi v. Cowles Magazine, Inc.*, 345 U.S. 663, 665–66 (1953)).

## III.   Background Common to Both Motions

The Court begins by outlining the background relative to both motions pending before the Court. After doing so, the Court will address and resolve each motion separately.

### A. Factual Background[3]

On February 18, 2022, at approximately 3:00 A.M., Aslam Yusopov ("Mr. Yusopov") "was operating and driving a truck with a trailer" ("Truck One") on the Pennsylvania turnpike. (ECF No. 1-3 at ¶ 16). Truck One was carrying a large container (the "Container"), which was owned by Defendant Amazon.com, Inc. ("Amazon"). (*Id.* at ¶ 17). As Truck One was at or near mile marker 124.4 of the Pennsylvania Turnpike, the Container "slid off of [Truck One] and onto the roadway, blocking east-bound lanes of traffic" at or near that mile marker. (*Id.*).

---

144(b)(1)) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."). Therefore, the Court has not considered the citizenship of defendants sued under fictitious names in assessing whether it possesses diversity jurisdiction over this action.

Second, a "limited liability company is a citizen of all the states of its members[.]" *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018). In this case, multiple defendants are limited liability companies, and the parties have not provided the Court with any indication of the citizenship of the members of those entities. (*See* ECF No. 1). Nonetheless, because Mr. Kerr is a citizen of Pennsylvania, (ECF No. 1 at 2; ECF No. 1-3 at 4), and because the Court has before it no indication that any member of any of the Defendant-LLCs in this matter is a citizen of Pennsylvania, the Court proceeds with the understanding that there is complete diversity of citizenship in this case.

[3] The Court draws the following factual allegations, which it accepts as true for purposes of deciding the pending motions, from Mr. Kerr's Complaint. (ECF No. 1-3).

At "or about the same time and place," Defendant Mark Logsdon ("Mr. Logsdon"), who was "operating and driving a truck with a trailer" ("Truck Two"), stopped "his vehicle behind [Truck One] and the [Container]." (*Id.* at ¶ 18). Further, at or "about the same time and place," Defendant Omar Roble ("Mr. Roble"), who was "operating and driving a truck with a trailer" ("Truck Three"), stopped behind Truck Two, Truck One, and the Container. (*Id.* at ¶ 19).

At approximately 3:14 A.M. on the same date, Mr. Kerr "who was the driver and sole occupant of" another tractor-trailer ("Truck Four"), "rounded a bend in the road near mile marker 124.4 and suddenly encountered" all three trucks, as well as the Container. (*Id.* at ¶ 20). Because Mr. Kerr had a "jersey barrier" on his left, Trucks Two and Three on his right, and an occupied berm, Mr. Kerr "had nowhere to go or stop safely." (*Id.* at ¶ 21). As a result, Mr. Kerr and his vehicle (Truck Four) collided with at least certain of the three trucks and the Container that were ahead of him. (*Id.*). Mr. Kerr suffered serious bodily harm from this collision. (*Id.* at ¶¶ 21–23).

### B.      Procedural History

On February 15, 2024, Mr. Kerr filed the operative Complaint in the Court of Common Pleas of Somerset County, Pennsylvania, asserting eight claims against the Stoughton Defendants, the BNSF Defendants, and multiple other defendants. (ECF No. 1-3 at 2, 17). As the Court previously noted, Mr. Kerr's claims against the Stoughton Defendants (for a Product Defect(s)) are contained in a single count—Count V. (*Id.* at 12–13). Mr. Kerr's claims against the BNSF Defendants (for Negligence) are likewise contained in a single count—Count Eight ("Count VIII"). (*Id.* at 15).

Amazon removed the action to this Court on April 1, 2024. (ECF No. 1).

On April 8, 2024, the Stoughton Defendants filed their "Motion to Dismiss [Mr. Kerr's] First Amended Complaint Pursuant to Rule 12[(b)](6)" and a Brief in Support. (ECF Nos. 8, 9). Mr. Kerr filed his Response in Opposition on May 1, 2024. (ECF No. 27).

On April 29, 2024, the BNSF Defendants filed their "Motion to Dismiss for Lack of Personal Jurisdiction" and a Brief in Support. (ECF Nos. 24, 25). Mr. Kerr filed his Response in Opposition on May 20, 2024. (ECF No. 37). Finally, on June 17, 2024, the BNSF Defendants filed their Reply. (ECF No. 55).

## IV.    The Stoughton Defendants' Motion to Dismiss for Failure to State a Claim

The Court now turns to the Stoughton Defendants' Motion to Dismiss Mr. Kerr's claims at Count V of the Complaint for failure to state a claim upon which relief can be granted. (ECF No. 8).

### A.    Background Unique to Mr. Kerr's Claims Against the Stoughton Defendants[4]

At Count V of his Complaint, Mr. Kerr states that the Stoughton Defendants "did manufacture, provide, distribute, design, or inject into the stream of commerce a product, to wit, [the Container] or trailer that was dislodged in this case, which was defective either as a matter of design or manufacture." (ECF No. 1-3 at ¶ 40). He further avers that: (1) the product(s) were "unreasonably dangerous"; (2) the product(s) "deviated from their intended design and failed to perform as safely as intended by the manufacturer"; (3) the product(s) "were defectively designed and unreasonably dangerous for their intended or reasonably foreseeable use"; (4) the "design or manufacturing defects existed in the product(s) at the time they left the

---

[4] As before, the Court draws the following factual allegations, which it accepts as true for purposes of deciding the Stoughton Defendants' Motion, from Mr. Kerr's Complaint. (ECF No. 1-3).

[Stoughton] Defendants' possession and control"; (5) Mr. Kerr "used the product(s) in a reasonably foreseeable manner and suffered injuries as a direct and proximate result of the defects"; (6) the "defective product resulted in the accident alleged" in Mr. Kerr's Complaint; (7) the "defective product was the direct and proximate cause of [Mr. Kerr's] injuries" (8) the "defective product was a substantial factor in causing [Mr. Kerr's] harm"; and (9) the Stoughton Defendants are "strictly liable for [Mr. Kerr's] damages caused by the defective and unreasonably dangerous condition of the product(s)." (*Id.* at ¶¶ 41–49).

In short, at Count V, Mr. Kerr advances a Product Defect claim against the Stoughton Defendants on the ground that they are strictly liable for a manufacturing or design defect in the Container or trailer.

### B.    The Parties' Arguments

The Stoughton Defendants argue that Mr. Kerr's claims at Count V are subject to dismissal because Mr. Kerr "has entirely failed to plead any facts whatsoever sufficient to make out a claim of strict products liability here." (ECF No. 9 at 5). Indeed, the Stoughton Defendants contend that the only true "factual allegation as to the Stoughton Defendants found in the [operative] Complaint is that they manufactured the subject [C]ontainer or trailer." (*Id.* at 6). Finally, according to the Stoughton Defendants, Mr. Kerr's averments that the Container or trailer "'deviated from their intended design', 'were defectively designed', and were 'unreasonably dangerous'" constitute "bare legal conclusions" that are "simply insufficient to make out a plausible claim." (*Id.* at 7).

Mr. Kerr first responds by arguing that his Complaint pleads sufficient facts to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure. (ECF No. 27 at 5).

Specifically, Mr. Kerr notes the statement in his Complaint that "'[Truck One] had on it a large [C]ontainer which slid off of the trailer and onto the roadway, blocking both east-bound lanes of traffic at or about mile marker 124.4.'" (*Id.*) (quoting ECF No. 1-3 at ¶ 17). According to Mr. Kerr:

> Reading this in a light most favorable to [him], and taking all reasonable inferences from it, the Court must conclude that the [C]ontainer on the trailer was designed and manufactured to be attached to the trailer in such a way that it would not slide off the trailer on the roadway. The fact that it did slide off the trailer is a clear indication that the [C]ontainer and trailer were not working as designed and/or manufactured.

(*Id.*). Indeed, Mr. Kerr contends that the Stoughton Defendants are essentially asserting that he must "state the factual reasons why the trailer slid off[,]" which requires Mr. Kerr to plead too much factual specificity at this stage in this case. (*Id.* at 6). In short, Mr. Kerr asserts that the "facts alleged in the [C]omplaint provide reasonable notice to the [Stoughton] Defendants of the claim against them and are sufficient to assert a cause of action for strict products liability." (*Id.*).

Second, Mr. Kerr argues that there are "circumstances where discovery may be deemed necessary before a court can rule on a Rule 12[(b)](6) motion. For instance, when missing information essential to a claim is peculiarly within a defendant's knowledge, a district court may have discretion to allow the plaintiffs limited discovery to uncover the missing details." (*Id.* at 6–7) (citing *New England Data Services, Inc. v. Becher*, 829 F.2d 286 (1st Cir. 1987)). Relatedly, Mr. Kerr contends that "limited discovery may be appropriate where a plausible claim may be indicated by the plaintiff's allegations, information needed to flesh out the allegations before trial may be in the control of the defendants, and modest discovery may provide the missing link." (*Id.* at 7) (citing *Douglas v. Hirshon*, 63 F.4th 49 (1st Cir. 2023)). According to Mr. Kerr,

-7-

because the "instant matter falls squarely within these exceptions … this Honorable Court should deny [the Stoughton Defendants' Motion] and allow [Mr. Kerr] to conduct discovery limited to gaining information pertaining to the product" at issue in this case. (*Id.*).

Finally, Mr. Kerr states that, when a complaint is subject to dismissal under Rule 12(b)(6), plaintiffs should be "given opportunity to amend absent futility or bad faith." (*Id.* at 8) (citing *Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004)). Indeed, dismissal "'without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility.'" (*Id.*) (quoting *Alston*, 363 F.3d at 236)). If the Court finds that Count V of Mr. Kerr's Complaint is subject to dismissal, then Mr. Kerr asserts that, in this case:

> [L]eave to amend the [C]omplaint is appropriate, as there is no indication of bad faith, undue delay, prejudice, or futility. The case is in its infancy; discovery has just begun so no party will be prejudiced by an amendment to the [C]omplaint. Amendment is particularly appropriate because the [C]omplaint was prepared for filing in Pennsylvania State Court, and was removed to Federal Court, which has far more stringent pleading requirements. [Mr. Kerr] should be given the opportunity to prepare a second amended complaint to comply with the Federal Court's more stringent requirements.

(*Id.*).

### C.    Legal Standard: Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[5] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("[M]ere restatements of the elements of [a] claim . . . are not entitled to the assumption of truth.") (internal quotation marks and citation omitted).

Third, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### D.    Discussion

#### 1.   Pennsylvania Law Regarding Strict Products Liability[6]

---

[5] Although *Iqbal* described the process as a "two-pronged approach," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court noted the elements of the pertinent claim before proceeding with that approach. *See id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

[6] A "federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamerlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000). Therefore, as the parties recognize, (ECF No. 9 at 6–7; ECF No. 27 at 4–5), Pennsylvania law governs Mr. Kerr's claims at Count V.

Under "Pennsylvania law, a seller may be liable in strict liability … for injuries caused by defective products." *Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 709 (3d Cir. 2018). The "test for strict liability is set forth in the Restatement (Second) of Torts § 402A (1965)." *Id.* (citing *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 351, 384–433 (Pa. 2014)).[7] Under Section 402A, a plaintiff must prove: "'(1) that the product was defective; (2) that the defect was the proximate cause of the plaintiff's injuries; and (3) that the defect causing the injury existed at the time the product left the seller's hands.'" *Id.* at 710 (quoting *Pavlik v. Lane Ltd./Tobacco Exps. Int'l*, 135 F.3d 876, 881 (3d Cir. 1998) (citing *Davis v. Berwind Corp.*, 690 A.2d 186, 190 (Pa. 1997)).

"Three types of defective conditions give rise to a strict products liability claim: design defects, manufacturing defects, and failure-to-warn defects." *Wright v. Ryobi Technologies, Inc.*, 175 F. Supp. 3d 439, 449 (E.D. Pa. 2016) (citing *Phillips v. A-Best Products Co.*, 665 A.2d 1167, 1170 (Pa. 1995)). As the Court noted earlier, Mr. Kerr contends that the Container or trailer was either defectively designed or manufactured. (ECF No. 1-3 at ¶ 40).

---

[7] Section 402A provides as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A.

The Pennsylvania Supreme Court's "*Tincher* decision sets out two standards to show a product is in a 'defective condition' in the design defect context: the consumer expectation standard and the risk-utility standard." *Igwe v. Skaggs*, 258 F. Supp. 3d 596, 609–10 (W.D. Pa. 2017) (citing *Tincher*, 104 A.3d at 387). Indeed, a product has a design defect if: "'(1) the danger is unknowable and unacceptable to the average or ordinary consumer' (the 'consumer expectations standard'), or (2) 'a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions' (the 'risk-utility standard')." *Sikkelee*, 907 F.3d at 710 (quoting *Tincher*, 104 A.3d at 335, 387, 389).

Turning to a manufacturing defect, such a claim "requires either direct evidence of 'a breakdown in the machine or a component thereof,' *Riley v. Warren Mfg., Inc.*, 688 A.2d 221, 224 ([Pa. Super. Ct.] 1997)," or "circumstantial evidence that the machine malfunctioned, along with 'evidence eliminating abnormal use or reasonable, secondary causes for the malfunction,' *Rogers v. Johnson & Johnson Products, Inc.*, 565 A.2d 751, 754 (Pa. 1989)." *James v. United States*, No. 19-CV-04627, 2020 WL 1624883, at *4 (E.D. Pa. Apr. 2, 2020); *cf. Chandler v. L'Oreal USA, Inc.*, 340 F. Supp. 3d 551, 564, 565–66 (W.D. Pa. 2018) ("To meet her burden [in showing a manufacturing defect under the malfunction theory], [p]laintiff must provide evidence of a malfunction along with evidence ruling out abnormal use or reasonable secondary causes of the malfunction.").

## 2.  Analysis

The Stoughton Defendants' primary argument is that Mr. Kerr's Complaint "does not allege any facts to suggest how the [C]ontainer or trailer were defective either in their manufacture or design." (ECF No. 9 at 6). Upon review of Mr. Kerr's Complaint, the Court

agrees that Mr. Kerr fails to state a Strict Products Liability claim under either a design defect or a manufacturing defect theory.

Indeed, the Court notes that Mr. Kerr has alleged that the Stoughton Defendants manufactured, provided, distributed, designed, or injected into the stream of commerce the Container or trailer, and that the Container slid off of the trailer of Truck One during the morning of February 18, 2022, setting off a chain of events culminating in Mr. Kerr's accident. (ECF No. 1-3 at ¶¶ 16–23, 40). These facts are certainly *consistent with* (i.e., they make possible) something having gone wrong with the Container or trailer on the morning of February 18, 2022. However, these factual allegations are so generalized that they do not permit the Court to find that Mr. Kerr has *plausibly* stated a claim for a design defect or a manufacturing defect under the standard above, *see supra* Section IV.D.1, and *plausible* claims are what this Court is duty-bound to let proceed to discovery. *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 168 (3d Cir. 2019) ("*Plausible* does not mean *possible*. If the allegations are 'merely consistent with' [a defective product], then they state no claim.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (emphasis in original)). In short, the facts pled by Mr. Kerr could *possibly* lead the Court to conclude that the Container or trailer (or both) had a design defect, or that they had a manufacturing defect, or that some other product connecting the Container to the trailer malfunctioned, or that the Container was not correctly attached to the trailer, or some combination of the foregoing, but the Court cannot find that these factual allegations move Mr. Kerr's design defect claim or manufacturing defect claim into the realm of *plausibility*.

Further, while Mr. Kerr states that the Container and trailer were "unreasonably dangerous[,]" "deviated from their intended design and failed to perform as safely as intended

by the manufacturer[,]" were "defectively designed and unreasonably dangerous for their intended or reasonably foreseeable use[,]" and were in a "defective and unreasonably dangerous condition[,]" the Court is bound to disregard those purely legal conclusions at this stage in this case. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("[M]ere restatements of the elements of [a] claim . . . are not entitled to the assumption of truth.") (internal quotation marks and citation omitted); *see also Bergstresser v. Bristol-Myers Squibb Co.*, No. 3:12-CV-1464, 2013 WL 1760525, at *3 (M.D. Pa. Apr. 24, 2013) (finding that statements by the plaintiff such as "[the product] was defective and unreasonabl[y] dangerous when sold by the [d]efendant" were "vague and conclusory, at best," and did "not meet the pleading requirements of *Twombly* and *Iqbal*").

Therefore, and although it is a close case, the Court cannot find that Mr. Kerr has *plausibly* stated that there was a *design defect* or *manufacturing defect* in the Container or trailer. *Blanding v. Walmart Inc.*, No. 23-CV-5142, 2024 WL 3433321, at *1, *7 (E.D. Pa. July 15, 2024) (finding, in a case where plaintiff sat on a stool that broke and injured him, that plaintiff had failed to state either a design defect claim or manufacturing defect claim because he had provided "nothing more than conclusory statements that the cabinet-and-stool set was 'in a defective condition and was unreasonably dangerous to consumers'"); *CM Regent Ins. Co. v. CAMaster, Inc.*, No. 4:22-CV-205, 2022 WL 17721589, at *1, *5 (M.D. Pa. Dec. 15 2022) (finding, in a case where the defendant manufactured a router involved in a fire causing significant damage at a high school, that the plaintiff had failed to state a design defect claim or manufacturing defect claim, and noting that "mere conclusory statements that the … [r]outer was defective as to its design or the way it was manufactured do not satisfy the pleading requirements at the

motion to dismiss stage"); *James*, 2020 WL 1624883, at *1, *4 (finding, in a case where the defendant's machine crushed the plaintiff's feet, that the plaintiff had failed to plausibly state a claim for a manufacturing defect, even though he "baldly assert[ed] that the machine's 'warming cabinet and component parts' were 'manufactured and sold in a defective and dangerous manner'"); *Bergstresser*, 2013 WL 1760525, at *1, *3 (finding, in a case where the plaintiff alleged that he had suffered injuries as a result of taking a medication, that the plaintiff had failed to state a manufacturing defect claim because he had only offered "vague and conclusory" allegations that were "insufficient to properly allege a strict liability claim based upon manufacturer's defect"). Accordingly, the Court holds that Mr. Kerr has failed to state a claim for Strict Products Liability at this stage in this case and grants the Stoughton Defendants' Motion to Dismiss.[8]

While the Court dismisses Mr. Kerr's claims at Count V, it does so without prejudice because it finds that: (1) amendment may not be futile in this case and (2) allowing Mr. Kerr leave to amend at this early stage in this case would not cause undue delay or prejudice or the like. *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *see also Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008). Therefore, the Court will permit Mr. Kerr twenty-eight days from the date of

---

[8] Although it need not and does not resolve this issue at this time, the Court also notes that there is a question in this case as to whether *Mr. Kerr* can advance a Strict Products Liability claim relative to the Container or trailer. *D'Antonio v. FMC Technologies, Inc.*, 2:16-CV-703, 2016 WL 7324151, at *2 (W.D. Pa. Sept. 30, 2016) ('[T]he Pennsylvania Supreme Court has, on occasion, permitted bystanders to pursue § 402A claims … [b]ut these Supreme Court cases do not specifically address a bystander's ability to sue under Section 402A … The Superior Court and federal district courts have likewise at times allowed bystanders to pursue strict liability claims, though there are also cases holding that only ultimate users or consumers can recover.") (internal quotation marks and citations omitted); *see also Menkes v. 3M Co.*, No. 17-CV-0573, 2018 WL 2298620, at *9–10 (E.D. Pa. May 21, 2018).

the entry of this Memorandum Opinion and Order to amend his claims at Count V. *Blanding*, 2024 WL 3433321, at *8–9.[9]

## V.   The BNSF Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

The Court now turns its attention to the BNSF Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. In doing so, the Court begins by outlining additional factual allegations relevant to that Motion.

### A.   Background Unique to the BNSF Defendants' Motion[10]

In his Complaint, Mr. Kerr states that both of the BNSF Defendants are subsidiaries of Berkshire Hathaway, and that both are Texas entities "operating one of the largest railroad systems in the USA[.]" (ECF No. 1-3 at ¶ 14).

With respect to BNSF in particular, Emily Lyle ("Ms. Lyle"), an employee of that company, submitted a Declaration averring that BNSF is a Delaware corporation and has its

---

[9] In dismissing Mr. Kerr's claims at Count V at this time, the Court is of course implicitly denying his request for discovery prior to dismissal. *See supra* Section IV.B. In doing so, the Court notes that Mr. Kerr has not referred the Court to any Third Circuit precedent (and the Court is unaware of the same) adopting or applying the rules articulated by the First Circuit and relayed by Mr. Kerr. (ECF No. 27). Indeed, in this case, when the Court applies *Twombly* and *Iqbal*, the Court deems it appropriate to dismiss Count V and grant Mr. Kerr leave to amend, but the Court deems it inappropriate to afford him limited discovery before ruling on the Stoughton Defendants' Motion. *Kurz v. State Farm Fire and Cas. Co.*, No. 16-CV-8681, 2017 WL 4163659, at *6 (D.N.J. Sept. 19, 2017) (addressing plaintiffs' request for either limited discovery before court's ruling on motion to dismiss or leave to amend complaint by granting motion to dismiss without prejudice and affording plaintiffs an opportunity to amend the complaint).

[10] The Court notes that, under the standard applicable to motions to dismiss for lack of personal jurisdiction, *see infra* Section V.C; *see also Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) ("We are satisfied that courts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff"), it accepts as true the allegations in this subsection that are set forth by Mr. Kerr. Although the Court also relays portions of the evidence offered by the BNSF Defendants in this subsection, the Court only utilizes that evidence as indicated below. *See infra* Section IV.D.

"national corporate headquarters" in Fort Worth, Texas. (ECF No. 25-1 at 1–2). Further, she

alleges that BNSF:

> [P]rovides freight transportation on an interstate rail system. BNSF operates one
> of the largest railroad networks in North America. BNSF operates over 32,500
> route miles of track (excluding multiple main tracks, yard tracks, and sidings) in
> 28 states and also operates in three Canadian provinces. BNSF owns over 23,000
> route miles, including easements, and operates on over 9,000 route miles of
> trackage rights that permit BNSF to operate its trains with its crews over other
> railroads' tracks. As of December 31, 2022, the total BNSF Railway system
> (including single and multiple main tracks, yard tracks, and sidings) consisted of
> over 50,000 operated miles of track. BNSF does not own or operate any tracks
> anywhere in the state of Pennsylvania. BNSF's farthest northeastern intermodal
> facility is located in Chicago, Illinois.

(*Id.* at 2). Finally, Ms. Lyle represents that: (1) none of BNSF's employees work in Pennsylvania,

(2) BNSF does not "have any railway yards, business locations, assets, or employees in

Pennsylvania[,]" and (3) BNSF is "not registered to do business in Pennsylvania." (*Id.* at 3).

Turning to Burlington Northern, Ms. Lyle avers that it: (1) is a Delaware limited liability

company with a single member, Berkshire Hathaway, Inc. (itself a Delaware corporation), (2)

has its principal place of business in Fort Worth, Texas, and (3) owns BNSF. (*Id.*).

With respect to the events of this case in particular, Mr. Kerr states as follows. First, the

BNSF Defendants "owned, operated, or supervised the railway yard where the [Container] was

secured unto the chassis and tractor" of Truck One. (ECF No. 1-3 at ¶ 59). Further, the BNSF

Defendants improperly loaded or secured the Container unto the chassis and improperly

secured the chassis and or Container apparatus to the tractor of Truck One. (*Id.* at ¶ 61). As a

result of the BNSF Defendants' actions, the Container "dislodged and was the direct and

proximate cause of [Mr. Kerr's] injuries and damages." (*Id.* at ¶ 62).

Finally, according to the Declaration of Steven Chavez ("Mr. Chavez"), an employee of BNSF, the Container was placed on the chassis of Truck One at the BNSF "intermodal facility Corwith, in Chicago, Illinois." (ECF No. 25-2 at 1–2).

B.      The Parties' Arguments

The BNSF Defendants first argue that this Court lacks general personal jurisdiction over both BNSF and Burlington Northern. (ECF No. 25 at 9–10). With respect to BNSF in particular, it asserts that it is not "at home" in Pennsylvania because it: (1) is incorporated in Delaware, (2) has its principal place of business in Texas, and (3) lacks contacts with Pennsylvania that are "so substantial and of such a nature" that they render it at home in Pennsylvania. (*Id.* at 10). Indeed, BNSF contends that it does not have any employees working in Pennsylvania, own or operate any tracks within Pennsylvania, or have any assets inside this Commonwealth, among other things. (*Id.*).

Burlington Northern likewise argues that it: (1) has its state of incorporation in Delaware, (2) has its principal place of business in Texas, and (3) has no contacts with Pennsylvania. (*Id.*).

The BNSF Defendants next assert that this Court lacks specific personal jurisdiction over both BNSF and Burlington Northern. (ECF No. 25 at 11). With respect to BNSF, it contends that any *potential* involvement that it had in the events relative to Mr. Kerr's claims "began and ended in Illinois." (*Id.* at 14). Further, BNSF argues that, even if it "had knowledge that the [C]ontainer's route would take it through Pennsylvania (which it didn't), such knowledge would be insufficient" to subject BNSF to specific personal jurisdiction within Pennsylvania. (*Id.*) (citing *Thompkins v. Taiga Bldg. Products, Ltd.*, No. 2:23-CV-333, 2024 WL 665226, at *2 (W.D.

Pa. Feb. 16, 2024)). In short, according to BNSF, since it "had no contacts with Pennsylvania, [Mr. Kerr's] cause of action could not arise out of that non-existent contact[,]" and the Court lacks specific personal jurisdiction over the company. (*Id.* at 15).

Likewise, Burlington Northern asserts that Mr. Kerr's Complaint "fails to make a prima facie case for specific personal jurisdiction" against it. (*Id.*).

In responding to the BNSF Defendants' Motion, Mr. Kerr first requests that the Court afford him an opportunity to conduct jurisdictional discovery to determine "if general or specific jurisdiction lies[.]" (ECF No. 37 at 3) (cleaned up). More specifically, Mr. Kerr contends that agents of "the Defendant,[11] here, loaded and secured the [C]ontainer on the chassis and discovery will support the claim that this was done with the knowledge and purpose of sending the load into Pennsylvania … [and] discovery should [therefore] be permitted to obtain such evidence." (*Id.* at 4).

Further, Mr. Kerr argues that, if the Court declines to permit jurisdictional discovery, he must only make out a "*prima facie* showing [that] personal jurisdiction exists in order to defeat dismissal." (*Id.*). Mr. Kerr asserts that he has made such a showing because he has adequately pleaded that:

> Defendant intentionally directed activities at Pennsylvania by loading and securing (or, more accurately, failing to secure) its [C]ontainer onto the chassis of a tractor and trailer and intentionally sending it into Pennsylvania, availing itself of the rights of motorists and commerce to transport goods on Pennsylvania state highways and enjoy the protections offered by the laws of that forum.

---

[11] The Court quotes Mr. Kerr's statement exactly as it is set forth in his Response in Opposition to the BNSF Defendants' Motion because the Court is unsure whether he is here referring to BNSF, Burlington Northern, or both.

(*Id.* at 5). Mr. Kerr also contends that the "exercise of jurisdiction in this case ... meets the requirement for fair play and substantial justice[.]" (*Id.*). Therefore, he requests that the Court deny the BNSF Defendants' Motion. (*Id.* at 6).

In the BNSF Defendants' Reply, they argue that Mr. Kerr's Complaint does not contain allegations sufficient to support the exercise of general personal jurisdiction over them, and his allegation that one or both of the BNSF Defendants knew (and purposed) that the Container be sent into Pennsylvania is insufficient to support the exercise of specific personal jurisdiction. (ECF No. 55 at 3–5). Finally, the BNSF Defendants argue that the Court should not permit jurisdictional discovery because Mr. Kerr has failed to present factual allegations that suggest "'with reasonable particularity the possible existence of requisite contacts between the party and the forum state.'" (*Id.* at 5–7) (quoting *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (cleaned up)).

### C.     Legal Standard: Rule 12(b)(2)

"[T]he burden of demonstrating the facts that establish personal jurisdiction" falls on the plaintiff, and "once a defendant has raised a jurisdictional defense, the plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotation marks and citations omitted). If the "district court does not hold an evidentiary hearing, 'the plaintiff[] need only establish a prima facie case of personal jurisdiction.'" *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (alterations in original)).

Further, "'[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe

disputed facts in favor of the plaintiff.'" *Id.* (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)). "'Of course, by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute.'" *Id.* (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).

In short, in "ruling on a Rule 12(b)(2) motion … the Court takes the allegations of the complaint as true[,]" but once a "jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or [other] competent evidence, contacts with the forum state sufficient to establish personal jurisdiction[,]" and the plaintiff "must establish those contacts 'with reasonable particularity.'" *Vonbergen v. Liberty Mut. Ins. Co.*, --- F. Supp. 3d ---, No. 22-CV-4880, 2023 WL 8569004, at *3 (E.D. Pa. Dec. 11, 2023) (internal quotation marks and citation omitted) (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal citation omitted)). Once the "plaintiff makes out a prima facie case in support of personal jurisdiction, the burden shifts to the defendant to establish that some other considerations exist which would render the exercise of personal jurisdiction unreasonable." *Id.* (citing *Carteret*, 954 F.2d at 150).

**D.     Discussion**

A "district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe*, 566 F.3d at 1227. Therefore, because this Court sits in the Western District of Pennsylvania, it looks to "Pennsylvania's long-arm statute, which permits the exercise of jurisdiction 'to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum

contact with this Commonwealth allowed under the Constitution of the United States.'"
*Aldossari on Behalf of Aldossari v. Ripp*, 49 F.4th 236, 257 (3d Cir. 2022) (quoting 42 Pa. Cons. Stat.
§ 5322(b)). As a result, the "statutory inquiry in this case … merges with the constitutional one."
*Id.*

With respect to the constitutional inquiry, a "defendant may be subject to suit consistent
with the constitutional guarantee of due process only if he has certain minimum contacts with
the State such that the maintenance of the suit does not offend traditional notions of fair play
and substantial justice." *Id.* (internal quotation marks and citation omitted).

Finally, there are two types of personal jurisdiction—general and specific. *Id.* (citing
*O'Connor*, 496 F.3d at 317).

The Court first assesses whether it has general personal jurisdiction over the BNSF
Defendants and whether jurisdictional discovery is warranted on that issue. The Court then
performs the same analysis relative to the question of whether it has specific personal
jurisdiction over the BNSF Defendants.

1. **The Court Holds That: (1) It Does Not Have General Personal Jurisdiction
   Over Either of the BNSF Defendants and (2) Jurisdictional Discovery Is Not
   Warranted on That Issue**

"General (or 'all-purpose') jurisdiction permits a court to hear any and all claims against
a defendant brought within a certain forum, even if those claims have nothing to do with any
actions the defendant took in the forum." *Aldossari*, 49 F.4th at 257. As the United States
Supreme Court has explained:

> [A] court may assert general jurisdiction over foreign (sister-state or foreign-
> country) corporations to hear any and all claims against them when their
> affiliations with the State are so "continuous and systematic" as to render them

essentially at home in the forum State. The "paradigm" forums in which a corporate defendant is "at home," we [have] explained, are the corporation's place of incorporation and its principal place of business. The exercise of general jurisdiction is not limited to these forums; in an "exceptional case," a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State."

*BNSF Ry. Co. v. Tyrell*, 581 U.S. 402, 413 (2017) (cleaned up).

In this case, Mr. Kerr's Complaint alleges that both of the BNSF Defendants are subsidiaries of Berkshire Hathaway, and that both are Texas entities "operating one of the largest railroad systems in the USA[.]" (ECF No. 1-3 at ¶ 14).[12] Mr. Kerr offers no other allegations or evidence regarding BNSF or Burlington Northern's place of incorporation or principal place of business.[13] (ECF Nos. 1-3, 37). Therefore, the Court finds that Mr. Kerr has failed to show that either BNSF or Burlington Northern is incorporated or has its principal place of business in Pennsylvania.

Mr. Kerr's only other relevant allegations regarding the BNSF Defendants are that: (1) they "owned, operated, or supervised the railway yard where the [Container] was secured unto the chassis and tractor" of Truck One, and (2) they improperly loaded or secured the Container unto the chassis and improperly secured the chassis and or Container apparatus to the tractor of Truck One, leading the Container to come dislodged and cause Mr. Kerr's accident and injuries. (ECF No. 1-3 at ¶¶ 59, 61–62; ECF No. 37). Taking these allegations along with the ones in the previous paragraph, they clearly do not render either BNSF or Burlington Northern "essentially

---

[12] Mr. Kerr further states that both BNSF and Burlington Northern may be served in Texas and have their registered agent in that state. (ECF No. 1-3 at ¶ 14).

[13] The Court reiterates that Burlington Northern is an LLC. (ECF No. 1-3 at ¶ 14). However, the Court need not concern itself with any potential distinction between where a corporation is "at home" and where an LLC is "at home" because Mr. Kerr has not offered allegations or evidence beyond what is in the text above.

at home" in Pennsylvania such that either entity is subject to general personal jurisdiction here. *BNSF Ry. Co.*, 581 U.S. at 414 (finding that BNSF was not "essentially at home" in Montana where it had over 2,000 miles of railroad track and more than 2,000 employees in that state).[14] Accordingly, the Court finds that Mr. Kerr has failed to show that this Court has general personal jurisdiction over either BNSF or Burlington Northern.

Finally, although the Court need not and does not rest its decision on the Declaration of Ms. Lyle, the Court does note that that her Declaration very much accords with the Court's conclusion regarding general personal jurisdiction. Indeed, her Declaration indicates that both BNSF Defendants are "at home" in Delaware and Texas and have very little connection with Pennsylvania. *See supra* Section V.A.

Before concluding its analysis on this score, the Court must consider Mr. Kerr's request for jurisdictional discovery relative to establishing general personal jurisdiction. In doing so, the Court notes that, while Mr. Kerr has lodged a request for jurisdictional discovery relative to general personal jurisdiction, he has provided no indication of what facts pertaining to general personal jurisdiction he believes such discovery would uncover. (ECF No. 37). That fact is critical because, for "jurisdictional discovery to be warranted, the plaintiff must present factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state." *PrimePay, LLC v. Prime Trust, LLC*, 559 F. Supp.

---

[14] The Court also notes that Pennsylvania "expressly permits its courts to exercise 'general personal jurisdiction' over registered foreign corporations, 42 Pa. Cons. Stat. § 5301(a)(2)(i), and the Supreme Court has explained that a foreign corporation consents to this general personal jurisdiction by complying with Pennsylvania's registration requirements, *see Mallory v. Norfolk Southern Ry. Co.*, 600 U.S. 122, 134–35 (2023)." *Vonbergen v. Liberty Mut. Ins. Co.*, ---F. Supp. 3d ---, No. 22-CV-4880, 2023 WL 8569004, at *3 (E.D. Pa. Dec. 11, 2023). In this case, Mr. Kerr offers no allegation or evidence indicating that either BNSF or Burlington Northern is registered in Pennsylvania. (ECF Nos. 1-3, 37).

3d 394, 401–02 (E.D. Pa. 2021) (cleaned up); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("*If* a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained. *Where the plaintiff has made this required threshold showing,* courts within this Circuit have sustained the right to conduct discovery before the district court dismisses for lack of personal jurisdiction.") (cleaned up) (emphasis added).

Therefore, because Mr. Kerr has not made this required threshold showing that jurisdictional discovery is appropriate relative to the issue of general personal jurisdiction, the Court declines to permit him to conduct jurisdictional discovery on that score. *PrimePay, LLC,* 559 F. Supp. 3d at 402 ("Here, Plaintiff's factual allegations are sparse and Plaintiff has not suggested what discovery would show or how amendment would establish jurisdiction. Therefore, jurisdictional discovery is not warranted here, and the case will be dismissed for lack of personal jurisdiction.").

2. **The Court Holds That: (1) It Does Not Have Specific Personal Jurisdiction Over Either of the BNSF Defendants and (2) Jurisdictional Discovery Is Not Warranted on That Issue**

"The test for specific jurisdiction entails a three-step analysis." *Kovalev v. Lidl US, LLC,* 647 F. Supp. 3d 319, 337 (E.D. Pa. 2022); *see also O'Connor v. Sandy Lane Hotel Co., Ltd.,* 496 F.3d 312, 317 (3d Cir. 2007). First, the "court must evaluate whether the defendant established minimum contacts [with the forum] by 'deliberately reaching out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there.'" *Id.* (quoting *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 592 U.S. 351, 359 (2021))

(cleaned up). Second, the "court must determine whether the litigation 'arises out of or relates to' at least one of those contacts." *Id.* (quoting *Ford Motor Co.*, 592 U.S. at 359) (cleaned up). Finally, if the "first two requirements have been met, the court may consider whether exercising personal jurisdiction over the defendant 'offends traditional notions of fair play and substantial justice.'" *Id.* (quoting *Ford Motor*, 592 U.S. at 358) (cleaned up).

In this case, as the Court noted earlier, the only potential connections between the BNSF Defendants and Pennsylvania alleged in Mr. Kerr's Complaint[15] are that: (1) they "owned, operated, or supervised the railway yard where the [Container] was secured unto the chassis and tractor" of Truck One, and (2) they improperly loaded or secured the Container unto the chassis and improperly secured the chassis and or Container apparatus to the tractor of Truck One. (ECF No. 1-3 at ¶¶ 59, 61). Mr. Kerr also alleges that, as a result of the BNSF Defendants' negligence, the Container fell off of Truck One in Pennsylvania, setting off a chain of events leading to his accident. (*Id.* at ¶¶ 16–23, 62).

But Mr. Kerr offers neither facts in his Complaint nor evidence indicating that: (1) the BNSF Defendants' actions occurred in Pennsylvania or (2) the BNSF Defendants were in any way aware that the Container, the chassis, and/or the tractor of Truck One would ever be present in Pennsylvania, let alone leave the state in which they loaded the Container onto Truck One. (*See* ECF Nos. 1-3, 37). In the absence of such facts, a reader of Mr. Kerr's Complaint would finish reading that document and be left with no idea as to where the BNSF Defendants placed the Container on the tractor, and that reader likewise would be left without any indication that

---

[15] The Court only looks to Mr. Kerr's Complaint because he has not submitted any evidence supporting his factual allegations therein. (*See* ECF No. 37).

either of the BNSF Defendants knew where the Container and tractor were going. Therefore, the Court finds that Mr. Kerr's Complaint fails to allege that either BNSF or Burlington Northern took any "act by which it purposefully avail[ed] itself of the privilege of conducting activities within [Pennsylvania.]" *Ford Motor Co.*, 592 U.S. at 359 (cleaned up).[16] Relatedly, because neither BNSF nor Burlington Northern had sufficient minimum contacts with Pennsylvania, it follows that Mr. Kerr's claims against the BNSF Defendants do not arise out of or relate to the types of minimum contacts with Pennsylvania that the Constitution requires. *Thompkins v. Taiga Bldg. Products, Ltd.*, No. 2:23-CV-333, 2024 WL 665226, at *3 (W.D. Pa. Feb. 16, 2024) (noting that litigation cannot arise out of or relate to a defendant's contacts with a forum state where "the defendant hasn't directed any activities at the forum in the first place.") (cleaned up).

Further, although the Court need not and does not base its decision on the Declaration of Mr. Chavez, it does note his statement that the Container was placed onto the chassis of Truck One at the BNSF "intermodal facility Corwith, in Chicago, Illinois." (ECF No. 25-2 at 2). Tellingly, in Mr. Kerr's Response in Opposition to the BNSF Defendants' Motion, he implicitly agrees that the actions taken by the BNSF Defendants occurred outside of Pennsylvania. (ECF No. 37 at 5) ("Defendant intentionally directed activities at Pennsylvania by loading and securing (or, more accurately, failing to secure) its [C]ontainer onto the chassis of a tractor and trailer *and intentionally sending it into Pennsylvania …*"). Therefore, although these indications are

---

[16] As the Court explains below, *see infra* Section V.D.2, even if the BNSF Defendants did in fact "load[] and secure[] the Container on the chassis … with the knowledge and purpose of sending the load into Pennsylvania[,]" this Court would still lack specific personal jurisdiction over both of the BNSF Defendants. Accordingly, the Court clearly lacks specific personal jurisdiction over the BNSF Defendants on the facts as pled in Mr. Kerr's Complaint, which lead to an even weaker (in fact virtually nonexistent) connection to Pennsylvania.

not the basis for the Court's decision, they do very much accord with the notion that the actions of the BNSF Defendants were taken outside of Pennsylvania.

As before, prior to concluding regarding the issue of specific personal jurisdiction, the Court must address whether to permit Mr. Kerr to engage in jurisdictional discovery with an eye toward obtaining evidence indicating that the "Defendant, here, loaded and secured the [C]ontainer on the chassis … with the knowledge and purpose of sending the load into Pennsylvania." (*Id.* at 4). In weighing Mr. Kerr's request, the Court reiterates the principle that, for "jurisdictional discovery to be warranted, the plaintiff must present factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state." *PrimePay, LLC*, 559 F. Supp. 3d at 401–02 (cleaned up).

Therefore, the Court considers whether it would have personal jurisdiction over the BNSF Defendants if they did in fact "load[] and secure[] the Container on the chassis … with the knowledge and purpose of sending the load into Pennsylvania."

As the Court noted earlier, the first prong of the specific jurisdictional analysis is purposeful availment, and the "critical finding that the defendant purposefully availed itself of conducting activities within the forum requires contacts that amount to a deliberate reaching into the forum state to target its citizens." *D'Jamoos ex re. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103–04 (3d Cir. 2009). Because of this principle, "efforts 'to exploit a national market' that 'necessarily include[s] Pennsylvania' are insufficient" to establish the existence of specific personal jurisdiction. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (quoting *D'Jamoos*, 566 F.3d at 104).

Relatedly, the Third Circuit has rejected the "stream-of-commerce theory[,]" which contends, "essentially, that specific personal jurisdiction exists over a non-resident defendant when that defendant 'has injected its goods into the forum state indirectly via the so-called stream of commerce,' rendering it foreseeable that one of the defendant's goods could cause injury in the forum state." *Id.* (quoting *D'Jamoos*, 566 F.3d at 104–05); *see also Blanding v. Walmart Inc.*, No. 23-CV-5142, 2024 WL 3433321, at *4 (E.D. Pa. July 15, 2024) ("And even if [defendant] knew or should have known its cabinets and stools would end up in Pennsylvania through Walmart's sales, that expectation is insufficient to establish specific jurisdiction. Such an argument relies on the stream-of-commerce theory …"); *Thompkins*, 2024 WL 665226, at *2 ("[Plaintiff's] argument that [defendant] established contacts with the forum because it had knowledge that the tractor-trailer it repaired would pass through Pennsylvania misses the mark. Even if [defendant] did have that knowledge, it's not an adequate contact to create specific jurisdiction."); *Bielsten v. Signature Solar LLC*, No. 2:22-CV-01786, 2024 WL 416712, at *3 (W.D. Pa. Feb. 5, 2024) ("Before engaging in a contacts analysis, the Court will briefly discuss [plaintiff's] 'stream of commerce' argument that the sale of the [product] to the [plaintiffs] in the state of Pennsylvania subjects [d]efendants to specific personal jurisdiction. Under United States Supreme Court and Third Circuit precedent, the 'stream of commerce' theory for specific personal jurisdiction has been rejected. [*See Shuker*, 885 F.3d at 780]. Therefore, the [plaintiffs'] arguments regarding the same are unavailing."); *Riad v. Porsche Cars NA, Inc.*, 657 F. Supp. 3d 695, 706–07 (E.D. Pa. 2023) (finding that the court lacked personal jurisdiction over a defendant that manufactured motor vehicles in Germany and then sold those vehicles to another company that distributed them in the United States, including in Pennsylvania).

Finally, the Court notes that "'injury to a forum resident [standing alone] is not a sufficient contact to the forum.'" *Riad*, 657 F. Supp. 3d at 707 (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)).

In this case, Mr. Kerr offers neither allegations nor evidence indicating any of the following: (1) that either BNSF or Burlington Northern sent the Container (or related items) into Pennsylvania *as its final destination*, (2) that the *only state* into which either BNSF or Burlington Northern sent the Container (or related items) *was Pennsylvania*, or (3) that either BNSF or Burlington Northern had any other connection with Pennsylvania other than loading the Container onto Truck One and intentionally sending Truck One into Pennsylvania. (ECF Nos. 1-3, 37); *Shuker*, 885 F.3d at 780 (finding factual allegations that defendant "sold its products … in Pennsylvania as part of its efforts to sell products in the United States generally—*not in Pennsylvania specifically*" insufficient to support the exercise of specific personal jurisdiction) (emphasis added). Therefore, given Mr. Kerr's allegations, the most that the Court could find is that the BNSF Defendants placed the Container (and related items) into the stream of commerce and directed that the Container (and related items) pass through "a national market [of roads] that necessarily included Pennsylvania[,]" actions which are insufficient to establish purposeful availment. *Shuker*, 885 F.3d at 780. In other words, even if Mr. Kerr obtained evidence supporting these allegations, that evidence would not constitute actions by which either BNSF or Burlington Northern engaged in a "deliberate reaching into [Pennsylvania] to target its citizens." *D'Jamoos*, 566 F.3d 103–04. Therefore, the Court will decline to permit Mr. Kerr to

conduct jurisdictional discovery in this matter.[17] *Thompkins*, 2024 WL 665226, at *3 (declining to permit jurisdictional discovery where the plaintiff's "proffered basis for personal jurisdiction" was "insufficient as a matter of law").

## VI.   Conclusion

For the foregoing reasons, the Court grants the Stoughton Defendants' Motion to Dismiss, (ECF No. 8), dismisses Mr. Kerr's claims at Count V without prejudice, and affords Mr. Kerr twenty-eight days from the entry of this Memorandum Opinion and Order to file an Amended Complaint with respect to his claims at Count V, if he so chooses.

Further, the Court finds that it cannot exercise personal jurisdiction over either BNSF or Burlington Northern. The Court also holds that Mr. Kerr has not shown that he is entitled to jurisdictional discovery. Those findings leave the Court prepared to dismiss Mr. Kerr's claims at Count VIII with prejudice.

However, the Third Circuit has held that a "district court that lacks personal jurisdiction must at least consider a transfer" under 28 U.S.C. Section 1631. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020); 28 U.S.C. § 1631. Therefore, before the Court enters a final order disposing of the Motions to Dismiss for Lack of Personal Jurisdiction,

---

[17] Relatedly, under the "'effects' test, a court has personal jurisdiction if the plaintiff can show '(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum[;]" and "'(3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.'" *Doe v. Hesketh*, 15 F. Supp. 3d 586, 593 (E.D. Pa. 2014) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 2014)). This test is plainly not applicable in this case, where Mr. Kerr's lone claim against BNSF and Burlington Northern sounds in negligence. (ECF No. 1-3 at 15). Further, the Third Circuit has explained that the "effects test" can "only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity." *IMO Indus.*, 155 F.3d at 265 (emphasis in original). For the reasons set forth in text above, the Court finds that Mr. Kerr has likely not alleged facts meeting this standard.

Mr. Kerr and/or any of the Crossclaim Defendants shall have until twenty-one days from the date of the entry of this Memorandum Opinion and Order "to file a request that the order disposing of the Motion[s] to Dismiss also provide for and identify a requested transfer to a court of competent jurisdiction." *Bielstein*, 2024 WL 416712, at \*6. Should "no request be filed by said date, the Court will enter an order" granting the BNSF Defendants' Motions to Dismiss and dismissing BNSF and Burlington Northern from this action entirely. *Id.*

      An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN KERR,                                    )          CIVIL ACTION NO. 3:24-68
                                              )
                   Plaintiff,                 )
                                              )          JUDGE KIM R. GIBSON
       v.                                     )
                                              )
AMAZON.COM, INC., *et al.*,                   )
                                              )
                   Defendants.                )

## <u>ORDER</u>

**AND NOW**, this ⟨20th⟩ day of August, 2024, upon consideration of Defendants
Stoughton Rental & Leasing Company, LLC; Stoughton Trailers Inc.; and Stoughton Trailers
LLC's (collectively, the "Stoughton Defendants") "Motion to Dismiss Plaintiff's First Amended
Complaint Pursuant to" Rule 12(b)(6), (ECF No. 8), and for the reasons set forth in the
accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that the Motion is
**GRANTED**. Plaintiff John Kerr's ("Mr. Kerr") claims against the Stoughton Defendants at
Count V of his operative Complaint (ECF No. 1-3) are **DISMISSED WITHOUT PREJUDICE**.
Mr. Kerr may file an Amended Complaint with respect to his claims at Count V within **28 days**
of the entry of this Memorandum Opinion and Order, if he so chooses. If Mr. Kerr does not file
an Amended Complaint within 28 days of the entry of this Memorandum Opinion and Order,
the Court will deem him as standing on his operative Complaint, and the Court's dismissal of
his claims as against the Stoughton Defendants will become a **DISMISSAL WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that, for the reasons set forth in the accompanying
Memorandum Opinion, the Court lacks personal jurisdiction over both Defendant BNSF

Railway Company ("BNSF") and Defendant Burlington Northern Santa Fe, LLC ("Burlington Northern") (collectively, the "BNSF Defendants"). Therefore, pursuant to Title 28, United States Code, Section 1631, the Court will afford Mr. Kerr and any Defendant asserting a crossclaim against either BNSF or Burlington Northern (or both) **21 days** from the date of the entry of this Memorandum Opinion and Order to file a request that the order disposing of the Motions to Dismiss also provide for and identify a transfer to a court of competent jurisdiction. In the event that neither Mr. Kerr nor any Defendant asserting a crossclaim against BNSF or Burlington Northern (or both) submits such a request within 21 days of the entry of this Memorandum Opinion and Order, the Court will enter an Order granting all of the BNSF Defendants' Motions to Dismiss and dismissing BNSF and Burlington Northern from this action entirely.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**